IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America<br><br>v.<br><br>William David Locklair, Jr. | Criminal No. 4:11-cr-02079-TLW-1<br><br>**Order** |

This matter is before the Court on Defendant William David Locklair, Jr.'s motion for compassionate release, ECF No. 103. For the reasons set forth below, Defendant's motion is denied.

## I.  BACKGROUND

On February 15, 2012, Defendant pled guilty to (1) possession with intent to distribute heroin and (2) possession of a firearm in furtherance of a drug trafficking crime. ECF No. 61. On June 12, 2012, the defendant was sentenced to 252 months' imprisonment and five years' supervised release. ECF No. 66. The defendant's sentence was subsequently reduced to 240 months' imprisonment pursuant to a change in Guidelines. ECF No. 77.

The defendant, through counsel, has filed a motion to reduce sentence, seeking release based on the risk posed by the ongoing COVID-19 pandemic. ECF No. 103. The defendant has additionally filed supplemental documents under seal in support of his motion. ECF No. 104. The Government has responded in opposition to the motion. ECF No. 105. This matter is ripe for disposition.

1

## II.  APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). 18 U.S.C. § 3582(c)(1)(A)(i) provides an exception to this general rule where a defendant qualifies for a modification due to "extraordinary and compelling reasons", often referred to as "compassionate release."

Prior to the passage of the First Step Act of 2018, Pub. L. No. 115- 391, 132 Stat. 5194 (2018), the Bureau of Prisons (BOP) had exclusive dominion over filing a motion for compassionate release pursuant to § 3582(c)(1)(A)(i). *United States v. Dowdell*, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A) to allow a defendant to request compassionate release from the sentencing court after exhausting his administrative remedies.  Therefore, a defendant may now file a motion directly to the district court requesting a reduction in the term of imprisonment, but only after the defendant has "exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, now provides in pertinent part:

> (c) Modification of an imposed term of imprisonment. —The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

> (A) **the court**, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that**—
>
> (i) **extraordinary and compelling reasons warrant such a reduction**;
>
> . . .
>
> **and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.**

18 U.S.C. § 3582(c)(1)(A) (emphasis added). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Griggs*, No. 4:18-CR-00216-DCC, 2020 WL 2614867, at *3 (D.S.C. May 22, 2020) (quoting *United States v. Edwards*, No. 6:17-CR-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020)).

The United States Sentencing Guidelines do not contain a policy statement that specifically addresses motions for reductions that are filed by an inmate. However, U.S.S.G. § 1B1.13 (Policy Statement) addresses motions for reductions that are filed by the Director of the Bureau of Prisons. The Policy Statement "largely mirrors the language of 18 U.S.C. § 3582(c)(1)(A)…". *Griggs*, 2020 WL 2614867, at *3. However, the Policy Statement additionally provides that the Court, before reducing a term of imprisonment, should determine that the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). Additionally, the commentary to § 1B1.13 provides four categories

3

of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons." *Id.* at cmt. n.1(A)–(C). Under each category, the commentary provides further instruction as to what constitutes "extraordinary and compelling reasons."

While the Policy Statement and Application Notes apply to motions filed by the Director of the BOP, this Court will consider them in connection with this motion. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants." *Id.* (internal citation and footnote omitted). Therefore, "[w]hile the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentencing reduction under § 3582(c)(1)(A)(i)." *Id.* "Thus, courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement." *Id.* at 579–80. Ultimately, the determination of whether extraordinary and compelling reasons exist in a particular case is a question reserved to the sound discretion of the district court. *See id.*

### III.  DISCUSSION

In the defendant's motion, he states that the facility where he is housed, Forrest City FCI, has a significant outbreak of COVID-19. He also argues that he is "*very-high risk* for more severe complications from COVID-19 due to comorbidities,

4

which include superficial vein thrombosis (SVT) and chronic hepatitis C (HCV)." ECF No. 103 at 10. In the sealed exhibits, ECF No. 104, the defendant offers medical documentation to support his alleged conditions. The documentation shows that the defendant was taken to the emergency room on May 7, 2020 due to complications from superficial vein thrombosis. ECF No. 104 at 1-3. The documentation also shows that the defendant's hepatitis C was active as recent as October of 2019. *Id.* at 36. The defendant argues that medical research shows that individuals with hepatitis C can develop chronic liver disease and that individuals with chronic liver disease are at increased risk to severe outcomes from COVID-19.

The defendant additionally argues that reducing his sentence to time served is consistent with the sentencing factors set forth in § 3553(a). The defendant argues that the term of imprisonment that he has served is sufficient to satisfy the purposes of sentencing. He argues that he has served eight and half years in custody and that his conviction, "although involving a firearm, was non-violent and drug-related in nature." ECF No. 103 at 16. The defendant argues that he poses little, if any, danger if released from custody. He argues that he is reformed and rehabilitated from his time in prison.

The Government opposes Defendant's motion. The Government first gives an account of the defendant's crime. The defendant was held accountable for the distribution of between one and three kilograms of heroin. Defendant "sold not only heroin, but also firearms, and he kept both in proximity to each other." ECF No. 105 at 5 citing Revised Presentence Investigation Report (RPSR) ¶¶ 14, 15, 16, 43. During a search of the defendant's residence, agents recovered "heroin, various narcotic pills,

digital scales, 7 handguns, 3 rifles, 2 shotguns, 2 bulletproof vests, 2 extended 12 gauge shotgun magazines with ammunition, over 160 rounds of various types of ammunition, over $7,000 in cash and a floor safe." *Id.* citing RPSR ¶¶ 18, 19. The defendant continued to sell drugs while on pretrial release which led to law enforcement executing another search warrant on his residence where they found heroin and a stolen handgun. Additionally, the Government notes that while Defendant was in pretrial detention, he "made multiple phone calls during which he asked other individuals to contact a family member of the District Judge originally assigned to this case, all for the apparent purpose of attempting to influence the Judge in Locklair's favor." *Id.* citing RPSR ¶¶ 47, 87. The Government then recounts some of Defendant's criminal history which includes convictions for possession with intent to distribute heroin, burglary, carrying a weapon on school grounds, possession of sawed off shotgun, criminal domestic violence, malicious injury to personal property, resisting arrest and receiving stolen goods. *Id.* citing RPSR ¶¶ 51, 52, 53, 58, 59, 65, 67, 69, 70.

The Government argues that the Court should deny the motion because the defendant has not established extraordinary and compelling reasons that support a reduction, that the defendant would pose a danger to the community, and the 3553(a) factors weigh against release. The Government first argues that the defendant's existing health issues do not constitute "extraordinary and compelling reasons" to justify release. The Government notes that the defendant alleges to suffer from chronic hepatitis C, superficial vein thrombosis, kidney stones, and chronic shoulder and knee pain. However, the Government argues that none of these conditions qualify

6

as a terminal illness nor has defendant shown that the conditions substantially diminish his ability to provide self-care within the environment of the correctional facility as specified in the policy statement application note. The Government additionally notes none of these conditions have been identified by the CDC as increasing a person's risk for developing serious illness form COVID-19, however, the Government does note that Locklair claims to suffer from chronic hepatitis which is a liver condition and thus a condition the CDC has concluded "might" increase risk. *Id.* citing People Who are at Higher Risk for Serious Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2F. The Government argues that "[g]iven the lack of date and certainty regarding the group of conditions that 'might' increase risk of severe illness from COVID-19, Locklair has failed to establish that his condition substantially diminishes his ability to provide self-care against serious injury or death as a result of COVID-19." *Id.* at 11 citing *United States v. Shelton,* No. 3:07-cr-00329-CMC, ECF No 153, at 3-4 (D.S.C. June 30, 2020) (holding hypertension/high blood pressure did not place the defendant "within Application Note 1(A) for compassionate release based on medical condition" and noting the CDC considers it to be "an underlying condition that 'might' increase the risk for severe illness if Defendant were to contract COVID-19").

The Government argues that the Court should deny the motion based on danger to public safety alone. The Government argues that Defendant's offense conduct, continued criminal conduct while on pretrial release and his criminal history show that he is potentially dangerous and likely to commit further crimes. The

7

Government reiterates that Defendant "was an armed heroin trafficker who also sold firearms and possessed numerous firearms at one time." *Id.* at 12. Further, the defendant continued to commit crimes while he was on pretrial release. The defendant also has a considerable criminal history that includes violent crimes.

Additionally, the Government takes the position that the Defendant's motion should be denied because the 3553(a) factors weigh against his release. Specifically, as to § 3553(a)(1), the Government argues that the defendant sold over a kilogram of heroin and also sold and possessed firearms. As to § 3553(a)(2)(A)-(C), the Government argues that the current sentence clearly reflects the seriousness of his offense and that the severity of the sentence is necessary to protect the public from further crimes by defendant. As to § 3553(a)(6), the Government takes the position that the defendant has served less than half of his sentence and that to reduce his sentence now would be contrary to avoiding unwarranted sentence disparities.

Finally, the Government argues that the Court has no authority to direct the BOP to place Defendant on home confinement. The Government takes the position that such designation decisions are committed solely to BOP's discretion.

The Court finds that the defendant has not established "extraordinary and compelling reasons" that warrant "compassionate release." The Court notes that the warden of defendant's facility denied his motion for release. ECF No. 103-2 at 2. The warden denied the motion on the grounds that defendant's crime was crime of violence, the defendant has not served at least 50% of his sentence, and his "pattern risk level is High." *Id.* The defendant provide documentation that he has health issues, which he has supported with medical records. He appears to suffer from

8

superficial vein thrombosis and hepatitis C. The Government cites to CDC documentation that shows that of the conditions that Defendant suffers from, only one, hepatitis C, falls into the category of conditions that even *might* increase his risk to COVID-19.

Even considering the evidence that defendant presents that he suffers from underlying medical conditions, the defendant has not established what amounts to "extraordinary and compelling reasons" that warrant a reduction in sentence. The Court recognizes COVID-19 as a very serious concern. Nonetheless, the Court concludes, in this case, that suffering from one condition which *might* increase the risk of severe illness of COVID-19 does not amount to "extraordinary and compelling reasons" that justifies release. *See Griggs*, 2020 WL 2614867, at *7 noting that "the existence of one or more preexisting conditions also does not necessarily provide a basis for a reduced sentence."). "Indeed, it would be dangerous for district courts to release inmates en masse based solely on the existence of a common chronic condition." *Griggs*, 2020 WL 2614867, at *7 (citing a Special Report, https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf., issued by the United States Department of Justice, Bureau of Justice Statistics stating that "In 2011-12, half of state and federal prisoners and local jail inmates reported ever having a chronic condition.").

Further, the Court concludes that even if the Defendant had established that there are "extraordinary and compelling reasons" warranting compassionate release, the motion would still be denied based on an analysis of the 3553(a) factors and the danger posed to the community as provided in § 3142(g).

9

The Court notes that the defendant was held accountable for the distribution of a substantial amount of heroin. The PSR attributed six kilograms of heroin to him, but he was ultimately held accountable at sentencing for one to three kilograms. ECF No. 67, 70. During a search of the defendant's residence, agents recovered "heroin, various narcotic pills, digital scales, 7 handguns, 3 rifles, 2 shotguns, 2 bulletproof vests, 2 extended 12 gauge shotgun magazines with ammunition, over 160 rounds of various types of ammunition, over $7,000 in cash and a floor safe." RPSR ¶¶ 18, 19. The defendant was a significant drug dealer. He was heavily armed as he possessed high-powered firearms and assault weapons. He also possessed large amounts of ammunition.

The defendant's drug operation was widespread. The operation was connected to a ring of Hispanic drug traffickers. The defendant traveled to Chicago, Atlanta, and Charlotte to engage in significant drug activity. In addition to the defendant's significant drug dealing operation, he also sold firearms which is clearly very serious conduct.

The defendant continued to sell drugs while on pretrial release. The defendant was released on bond after his initial appearance. While on bond, the defendant committed a significant breach of bond conditions by continuing to sell heroin.

The defendant has a significant prior record. As a juvenile the defendant was convicted for Burglary, Carrying Weapon on School Grounds, and Possession of a Sawed-Off Shotgun. ECF No. 70 at ¶¶ 51, 52, 53. The defendant also has many adult convictions including Criminal Domestic Violence, Malicious Injury to Property, Resisting Arrest, Possession with Intent to Distribute Heroin. *Id.* at ¶¶ 58, 59, 65, 67.

While in pretrial detention, the defendant obstructed justice by attempting to influence the federal district judge originally assigned to his case. The defendant "made multiple phone calls during which he asked other individuals to contact a family member of the District Judge originally assigned to this case, all for the apparent purpose of attempting to influence the Judge in Locklair's favor." RPSR ¶¶ 47, 87.

The defendant is a long-time significant criminal offender. His criminal conduct started as a juvenile and continued into his adult life. His conduct in connection with the federal convictions for which he is now serving time show he is a dangerous offender who poses a risk to the public if released. His prior record and conduct while on bond also confirm he poses a danger to the public if released.

The Court notes that the defendant has served less than one-half of his 240-month sentence. The Court finds that the § 3553(a) factors weigh against a reduction in sentence.

The Court acknowledges the legitimate concerns based on the ongoing COVID-19 pandemic and that compassionate release is one of the tools that can be exercised in some circumstances to mitigate the impact of the virus. The Court also acknowledges the significant steps taken by the BOP to slow the spread of COVID-19 in federal institutions as outlined in the Government's brief. See ECF No. 105 at 2–5 (noting that, amongst other steps, inmates and staff have been issued face masks, new inmates are screened for COVID-19 exposure risks, volunteer visits have been suspended, and only limited group gathering is afforded with special attention to social distancing to the extent possible).

Where a defendant has exhausted the administrative remedies and files a motion directly to the Court, the Court will analyze each defendant on a case-by-case basis to determine where a potential reduction is appropriate. In this case, based on Defendant not establishing "extraordinary and compelling" circumstances, the 3553(a) factors, and the danger posed to community as provided in § 3142(g), a reduction in sentence to release the defendant is not appropriate.

## IV.  CONCLUSION

After careful review of the filings and relevant caselaw, and for the reasons set forth above, the Defendant's motion for compassionate release, ECF No. 103, is **DENIED.**

**IT IS SO ORDERED.**

                                         *s/Terry L. Wooten*
                                         Senior United States District Judge

September 1, 2020
Columbia, South Carolina